UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:13-CV-01167-JGH

AMY SUE WITHAM                                                  PLAINTIFF

v.      **RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

INTOWN SUITES LOUISVILLE
NORTHEAST, LLC                                                  DEFENDANT

Comes Plaintiff, Amy Witham ("Plaintiff"), by and through counsel, and states

the following in response to the Motion for Summary Judgment filed by Defendant

Intown Suites Louisville ("Defendant").

## RE-STATEMENT OF FACTS

Plaintiff believes that, while made in good faith, Defendant's statement of the

facts contains inaccuracies and/or omits important facts necessary to the consideration of

this motion. Plaintiff therefore proffers the below restatement of facts.

Defendant hired Plaintiff on November 23, 2010 to manage certain hotel property

owned by Defendant.[1] In two years on the job, Plaintiff performed her duties

exceptionally well and never faced any form of job complaint, reprimand, or discipline.[2]

Defendant agrees that Plaintiff was a model employee, and was used to train other

managers.[3]

On November 19, 2012, Plaintiff was on Defendant's property performing her job

duties as required. At some point during the day Plaintiff was conversing with Edward

---

[1] Plaintiff's Verified Complaint, ¶ 9; Depo. of Toni Jones, p. 7 (attached as Exhibit 1).
[2] Depo. of Toni Jones, pp. 35–36.
[3] Id.; Id. at p. 7; Defendant's Memo in Support, p. 1.

Lucas ("Lucas"), a former technician of Defendant's, and Damien Depa ("Depa"), a former manager in training of Defendant's.[4] An unknown individual entered the hotel lobby while Plaintiff, Depa, and Lucas were discussing various matters.[5]

The unknown man approached the counter and began to inform Plaintiff that the outside vending machine must be broken because it gave him water when he wanted root beer.[6] At this time Lucas exited the building.[7] Plaintiff quickly and professionally told the man that the vending machine was not owned or operated by her or the Defendant.[8] In an attempt to professionally diffuse the situation, Plaintiff told the man that there was nothing she could do at that time, but she would tell the vending machine operators of the problem the next time they came by.[9] Plaintiff also asked the man what hotel room he was staying in.[10] The unknown man informed Plaintiff that he was not one of Defendant's guests.[11] Plaintiff then informed the man in a non-threatening manner that he should be careful because the police had been ticketing for trespassing recently.[12]

A few moments passed without any communication between Plaintiff and the man, during which time Plaintiff continued to maintain her professional demeanor.[13] Plaintiff did not say or do anything to otherwise provoke the man into an altercation.[14] The unknown individual eventually responded to Plaintiff's statements in a crude,

---

[4] Incident Video, attached to Defendant's Memo in Support as Exhibit B.
[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] Id.
[12] Id.; Unemployment Hearing Audio (attached as Exhibit 2).
[13] Incident Video, attached to Defendant's Memo in Support as Exhibit B.
[14] Id.

offensive, and profane manner.[15] Plaintiff, still acting professionally, told the man that he could not act that way on Defendant's property and needed to leave.[16] The man, still unprovoked by Plaintiff, continued being argumentative and raised his voice.[17] Plaintiff again asked the individual to leave, and the individual responded by saying, "You're lucky I don't come across that counter."[18] At this point, Plaintiff pointed to a security camera in the lobby and told the individual, "Come across the counter because it's on camera now."[19] Plaintiff only said this in the hopes it would scare the man into leaving the premises and never intended it as an actual invitation to cross the counter.[20]

The unknown man then approached the counter and lifted himself onto it. Witham, as video depicts, took a defensive posture and never placed her hands on the man, took an aggressive step towards him, or otherwise physically engaged him.[21] The man eventually lashed out physically and knocked a computer owned by Defendant off the counter and onto the ground.[22] Depa, who until this time had idly stood to the side of the encounter, grabbed a phone to dial 9-1-1 as instructed by Plaintiff and then exited the building.[23]

Plaintiff then walked from behind the counter into the main portion of the lobby.[24] The man at that time made no aggressive move towards Plaintiff but also did not make to leave the lobby.[25] Without provoking the man or otherwise physically engaging him,

---

[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id.
[20] Depo. of Amy Witham, p. 98, attached to Defendant's Memo in Support as Exhibit A.
[21] Incident Video, attached to Defendant's Memo in Support as Exhibit B.
[22] Id.
[23] Id.
[24] Id.
[25] Id.

Plaintiff blocked his exit from the building and took out a phone in order to contact assistance.[26] Plaintiff blocked the door in order to protect Defendant's tenants from walking into an unsafe situation and to keep the unknown man on the premises until authorities arrived.[27] Plaintiff had never been in a situation like this before and believed she was handling the incident in the safest manner possible in accordance with Defendant's policies.[28]

The individual, realizing the predicament he put himself in, attempted to open the door but was unsuccessful.[29] He then violently grabbed Plaintiff and pushed her against a wall.[30] With her back towards the man and not knowing what he would do next, Plaintiff defended herself by attempting to turn around and grab onto the individual.[31] Plaintiff and the unknown man scuffled for a few seconds.[32] Ultimately, the man pushed Plaintiff to the ground and viciously kicked her in the face.[33]

The man opened the door and ran into Lucas, who was still on the property.[34] Lucas wrestled with the man and attempted to detain him by pinning him against a wall.[35] However, the man was able to free himself and run off the premises. Lucas was not

---

[26] Id.

[27] Unemployment Hearing Audio.

[28] In reality, Defendant has no specific policy and/or procedure that deals with the bizarre situation Plaintiff was faced with here. Corporate representative Toni Jones testified that Plaintiff violated policies that prevented unsafe working conditions, harassment of third parties, and created a professional environment. Depo. of Toni Jones, p. 38. These are all generic claims and there was no citation or mention of a specific company policy. Defendant has not, and cannot, point to a specific protocol violated by Plaintiff. This was recognized by the Kentucky Unemployment Insurance Commission, which held that Plaintiff had not engaged in misconduct connected with the work following an evidentiary hearing on the matter. Unemployment Hearing Order Affirming, March 18, 2013, first page attached as Exhibit 3.

[29] Incident Video, attached to Defendant's Memo in Support as Exhibit B.

[30] Id.

[31] Id.

[32] Id.

[33] Id.

[34] Id.

[35] Id. This fact is clearly depicted from watching the Incident Video (Defendant's Exhibit B) from the security camera feed located behind the counter and looking out the front lobby door.

placed on paid leave, reprimanded, disciplined, or even investigated in any way for his intentional and physical actions against the unknown man.[36]

Plaintiff then stepped outside to try and ascertain where the unknown man went and also to alert a nearby apartment complex manager to the situation.[37] At no time did she run after the unknown man screaming obscenities.[38] Plaintiff eventually returned inside, collected her things, and then went to the hospital to receive treatment for the injuries she sustained while protecting Defendant's property, clients, and business interests.[39]

Plaintiff called her immediate supervisor Mark McCracken ("McCracken") to let him know that she was going to the hospital for treatment of her injuries sustained from the aforedescribed incident, including a broken finger; overall soreness in her right hand; and swelling, bruising, and pain in her face.[40] Plaintiff's brother also talked to McCracken later that day to keep McCracken updated on Plaintiff's injuries.[41] McCracken relayed at least a portion of this medical information to Toni Jones ("Jones"), Defendant's general counsel and Director of Human Resources.[42] Despite knowing the facts of the attack, hearing about Plaintiff's injuries, and knowing she was seeking

---

[36] Depo. of Toni Jones, p. 44.
[37] Unemployment Hearing; Incident Video, attached to Defendant's Memo in Support as Exhibit B.
[38] Incident Video, attached to Defendant's Memo in Support as Exhibit B. This fact is material, or at the least important for consideration of this motion, as Defendant claims Plaintiff exhibited unprofessionalism and dangerous tendencies when she "chased after the man, yelling obscenities and threats while in pursuit." Defendant's Memo in Support, p. 3.
[39] Unemployment Hearing?; Depo. of Amy Witham, p. 112.
[40] Depo. of Amy Witham, p. 112, attached to Defendant's Memo in Support as Exhibit A.
[41] Id.
[42] Depo. of Toni Jones, pp. 12–15. This fact is proven because Jones stated that she did not call Plaintiff on the same day of the incident because, " . . . [Plaintiff] was seeking medical care and we wanted her taken care of." Id.

treatment, Defendant failed to open a worker's compensation claim regarding the incident per Defendant's own policy.[43]

The worker's compensation claim was allegedly not filed because the incident was marked as police on scene in a subsequent incident report and Mindy Louden ("Louden"), the manager in charge of processing claims, was out of town.[44] However, Louden was also available through email during that week, Jones was ultimately the person in charge that week of filing claims in Louden's absence, and McCracken (and arguably Jones) knew of the medical nature to the incident despite its labeling as "police on scene."[45] A worker's compensation claim was not filed until Plaintiff herself called Defendant a week after the incident.[46] McCracken did eventually call Plaintiff back but informed her that she was being put on paid administrative leave due to the incident with the unknown man.[47] There were no plans by Defendant to terminate Plaintiff at this time as Defendant put off all decision making until after the Thanksgiving holiday.[48]

Approximately a week later, on November 26, 2012, the facts of this case continued to further develop. Plaintiff had attempted to see a specialist for her injuries sustained in the aforementioned incident, but could not set an appointment without a worker's compensation claim number.[49] Knowing she should have had a claim by that time, Plaintiff called McCracken to obtain the claim number. McCracken notified Plaintiff that a claim had not been started because of a mix up with the initial incident report regarding the incident. He gave Plaintiff the number for Louden, who at this time

---

[43] Unemployment Hearing Audio.
[44] Depo. of Toni Jones, pp. 24–25, 47–48.
[45] Id. at pp. 12–15, 24–26.
[46] Depo. of Amy Witham, pp. 121, 129, attached to Defendant's Memo in Support as Exhibit A.
[47] Depo. of Toni Jones, pp. 22–23.
[48] Id. at p. 23.
[49] Depo. of Amy Witham, p. 122, attached to Defendant's Memo in Support as Exhibit A ; Unemployment Hearing Audio.

was back in the office.[50] Plaintiff called Louden who told Plaintiff she would "take care of it."[51] Louden did eventually start a claim for Plaintiff that day but only after first talking to Jones about the claim.[52]

Eventually that same day, November 26, 2012, Defendant called Plaintiff back. At that time Plaintiff spoke to McCracken and Jones.[53]  Rather than address her injuries and unfair treatment, Plaintiff was told that it was in the company's best interest to terminate her employment.[54]  The reason given was that she put the company and herself in harm's way by her unprofessional actions on November 19, 2012.[55] Not once before termination did Jones, the head of HR, meet with Plaintiff to discuss the events of November 19 or even review Plaintiff's personnel file.[56] Plaintiff was never put on a progressive discipline program, as would have been allowed by Defendant's policies, and no facts indicate that such placement was ever considered.[57]

### ARGUMENT

Defendant fired Plaintiff solely because she exercised her right to file a worker's compensation claim for injuries she sustained while working on the job for Defendant. In doing so, Defendant retaliated against Plaintiff, discriminated against Plaintiff, and/or otherwise violated public policy that protected Plaintiff. Defendant's only defense is to hide behind thinly veiled excuses based on a hyper-technical reading of an incident report's labeling, a willful ignorance of Plaintiff's wish to file for worker's compensation, vague claims of Plaintiff's unprofessionalism, and Thanksgiving holiday scheduling

---

[50] Depo. of Amy Witham, p. 121, attached to Defendant's Memo in Support as Exhibit A.
[51] Id.
[52] Depo. of Toni Jones, pp. 24–25.
[53] Depo. of Toni Jones, p. 46.
[54] Id.
[55] Id.
[56] Id. at pp.33–35, 44.
[57] Id.

conflicts. Defendant should not be able to escape liability on such dubious assertions, as issues of material fact still exist, and they should instead be made to prove their defenses before a jury. Therefore, Defendant's motion for summary judgment should be denied.

## I. STANDARD OF REVIEW

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[58] Stated another way, "summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party."[59]

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the non-movant's pleadings] . . . which it believes demonstrate the absence of a genuine issue of material fact."[60] A non-moving party cannot defend against a motion for summary judgment by merely relying on the face of their pleadings but must establish that there are "specific facts showing that there is a genuine issue for trial."[61] However, the non-moving party is not required to go so far as to produce evidence that would be admissible at trial and can rely on any evidence identified in F.R.C.P. 56(c).[62] In determining whether or not an issue of material fact exists "the evidence must be viewed

---

[58] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting F.C.R.P. 56).
[59] <u>Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.</u>, 145 F.3d 1303, 1307 (Fed. Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)) (overturned on other grounds).
[60] <u>Celotex</u>, 477 U.S. at 323.
[61] <u>Celotex</u>, 477 U.S. at 323.
[62] <u>Chiuminatta</u>, 145 F.3d at 1307 (citing <u>Transmatic, Inc. v. Gulton Indus., Inc.</u>, 53 F.3d 1270, 1274 (Fed. Cir. 1995)).

in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent."[63]

Employment discrimination cases are rarely subject to the grant of summary judgment. In considering a motion for summary judgment, Courts are "cautioned that 'summary judgment should seldom be granted in employment discrimination cases'" and that "[o]nly in rare cases when there is no dispute of fact and there exists only one conclusion should summary judgment be granted."[64] The court in EEOC v. General Motors Corp relied on the Eighth Circuit's reasoning that "because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support *any* reasonable inference for the non-movant."[65]

## II. GENUINE ISSUE OF MATERIAL FACTS EXISTS AS TO PLAINTIFF'S KRS § 342.197(1) CLAIM

It is true that Kentucky is a state of at-will employment, meaning an at-will employee may be terminated for no cause. However, this doctrine is constrained by certain limitations. One limit under Kentucky law, as enunciated by KRS § 342.197, is that "no employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter."

In making a claim that they were terminated in violation of KRS § 342.197 a plaintiff must show and establish a *prima facie* case.[66] This requires the plaintiff to show

---

[63] Chiuminatta, 145 F.3d at 1307 (citing Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274 (Fed. Cir. 1995)).

[64] EEOC v. General Motors Corp., 11 F.Supp.2d 1077, 1080 (E.D.Mo. 1998), citing Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (emphasis added).  *See also* DiLaurenzio v. Atlantic Paratrans, Inc., 926 F. Supp. 310, 314 (E.D.N.Y. 1996) (holding that the severity and pervasiveness of harassing conduct "is the sort of issue that is often not susceptible of summary resolution").

[65] Crawford, 37 F.3d at 1341 (emphasis added).

[66] Dollar Gen. Partners v. Upchurch, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006).

"(1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action."[67] This test does not require that the plaintiff show the adverse action suffered was solely because of a desire of an employer to retaliate, but that retaliation for using a protected activity was "a substantial and motivating factor" for termination.[68] Thus, an employer could have a legitimate reason for terminating an employee but still violate KRS § 342.197 if their decision to terminate was substantial motivated by a desire to retaliate against the use of a protected activity.[69] "Because there is often a lack of direct evidence, proof of a causal connection can be difficult and requires reliance on inference. In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action."[70]

"Once a prima facie case is established, the burden shifts to the defendant to show a non-retaliatory reason for the adverse employment decision."[71] Assuming a defendant can meet this burden, "the case then proceeds with the plaintiff having to meet her initial burden of persuading the trier of fact by a preponderance of the evidence that the defendant unlawfully retaliated against her."[72] "In other words, a plaintiff's prima facie

---

[67] *Id.* (citing Brooks v. Lexington-Fayette Urban County Housing Authority, 132 S.W.3d 790 (Ky. 2004)).

[68] *Id.*; First Prop. Mgmt. Corp. v. Zarebidaki, 867 S.W.2d 185 (Ky. 1993). The substantial and motivating factor test is a lower burden. *Id.*

[69] Dollar Gen. Partners v. Upchurch, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006); First Prop. Mgmt. Corp. v. Zarebidaki, 867 S.W.2d 185 (Ky. 1993); Vaughan v. Berry Plastics Corp., 2013 U.S. Dist. LEXIS 8437 (W.D. Ky. Jan. 22, 2013).

[70] Dollar General, 214 S.W.3d at 915.

[71] *Id.* at 916 (citations omitted).

[72] *Id.*

case plus proof of a pretext may constitute sufficient evidence to survive a motion for a directed verdict."[73]

## A.   PLAINTIFF HAS ESTABLISHED HER *PRIMA FACIE* CASE

In employment cases, the burden on a plaintiff in establishing a *prima facie* case is typically "not a heavy one."[74] Plaintiff has shown that she engaged in protected activity. Defendant makes two arguments against this, 1) Plaintiff did not file a formal worker's compensation claim and 2) Defendant did not know of Plaintiff's intent to file a claim. First, Plaintiff was not required to file a formal claim in order to engage in a protected activity. "[T]he term pursuing a lawful claim pursuant to KRS §342.197 does not require that a formal claim be filed prior to the employee's termination."[75]

> A requirement that an actual filing of a claim is the only event which would trigger the statutory protection would frustrate the legislative intent evidenced in KRS 342.197. In the face of such a requirement, an employer could, upon receipt of any notice that an employee intended to file for workers' compensation benefits, fire the claimant and avoid the consequences of KRS 342.197 entirely.[76]

Defendant cites to one case, Hall v. Hammond Transportation, Inc., 2009 WL 3231392 (Ky. App., October 9, 2009), in an attempt to argue that Plaintiff's seeking of medical treatment and talking to McCracken about her injuries was not enough to demonstrate a known intent to engage in protected activities. However, Hall is distinguishable from Plaintiff's instant case and cited authorities. In Hall, that plaintiff

---

[73] *Id.*

[74] Minter v. Rutherford County Bd. of Educ., 853 F.2d 927, 927 (6th Cir. 1988).

[75] Vaughan v. Berry Plastics Corp., 2013 U.S. Dist. LEXIS 8437, *9 (W.D. Ky. Jan. 22, 2013) (citing Overnite Transp. Co. v. Gaddis, 793 S.W.2d 129, 130-131 (Ky. Ct. App. 1990)).

[76] *Id.* at 10 (quoting Unifirst Corp. v. Stewart, 2009 Ky. App. Unpub. LEXIS 109, 2009 WL 960690, *5 (Ky. Ct. App. 2009)).

11

was injured on the job and then preceded to work for his next four shifts.[77] Further, that

plaintiff made up an excuse to miss work unrelated to his physical injury before he finally

alerted his employer to his injuries some days later.[78] Finally, that plaintiff did not even

seek or receive treatment for the injury he sustained until three weeks after he sustained

it.[79] Thus, there was no reasonable inference available that the plaintiff was terminated

for impliedly engaging in a protected activity by expressing his intent to file a worker's

compensation claim.[80]

Plaintiff's case instead is much more in line with her above-cited authorities

Vaughan[81] and Overnite.[82] Like those cases, Plaintiff immediately reported her injuries to

McCracken, her immediate supervisor, and did not continue working. McCracken then

later relayed this information Jones and other decision makers for Defendant.[83] Further,

she told Defendant that she was going to the hospital to seek treatment.[84] Plaintiff even

had her brother keep Defendant up to date on the extent of her injuries. Finally, on the

morning of the day that she was fired, Plaintiff called Defendant specifically asking them

about the worker's compensation claim she assumed would have already been initiated

per Defendant's own policy, thus reaffirming to Defendant that she was seeking

treatment and intended to file a claim.[85]

It is therefore readily apparent that Plaintiff intended to file a worker's

compensation claim and thus engaged in protected activity. One would be hard-pressed to

---

[77] Hall v. Hammond Transp., Inc., 2009 Ky. App. Unpub. LEXIS 854 (Ky. Ct. App. Oct. 9, 2009).
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] Vaughan v. Berry Plastics Corp., 2013 U.S. Dist. LEXIS 8437, *9 (W.D. Ky. Jan. 22, 2013).
[82] Overnite Transp. Co. v. Gaddis, 793 S.W.2d 129, 130-131 (Ky. Ct. App. 1990).
[83] Depo. of Amy Witham, p. 112, attached to Defendant's Memo in Support as Exhibit A; Depo. of Toni
     Jones, pp. 12–15.
[84] Id.
[85] Depo. of Amy Witham, p. 121, attached to Defendant's Memo in Support as Exhibit A.

determine a legitimate reason for how Defendant could not have also known of Plaintiff's intent. Still, Defendant makes an attempt at avoiding the establishment of a *prima facie* case by arguing that, at the time Defendant terminated Plaintiff, Jones had no idea that Plaintiff had taken such actions showing her intentions to file a worker's compensation claim.[86] Thus, even while Plaintiff may have intended to file a claim, Defendant did not know it and could still avoid liability.

First, Jones has expressly admitted to knowing that Plaintiff was seeking medical care to some extent and thus should had reasonably inferred Plaintiff's implied intent to seek worker's compensation.[87] Even if you could take as true Jones's statement that she had no idea about a workman's compensation claim, Defendant must argue that, by virtue of Jones individually not knowing of Plaintiff's activity when Plaintiff was terminated, the Defendant as an entity could not possibly have retaliated against Plaintiff. This argument must fail. Plaintiff did not sue Jones individually for retaliation but Intown Suites as a business entity.[88] Therefore, what Jones did or did not know individually does not matter to the extent that other agents of the Defendant involved in the termination decision did have knowledge of Plaintiff's intentions.[89] One such decision maker was McCracken, and Defendant admits his involvement.[90] McCracken knew of Plaintiff's

---

[86] Defendant's Memo in Support, pp. 9–10.

[87] Depo. of Toni Jones, pp. 12–15.

[88] *See* Plaintiff's Verified Complaint.

[89] <u>Salyer v. Value Mart Disc. Store</u>, 1988 Ky. App. LEXIS 130 (Ky. Ct. App. Sept. 2, 1988) (Miller, J. concurring) (knowledge of the employer, not individual agents, is considered in retaliation claims); <u>Grassman v. Landry's Seafood House</u>, 2003 Ky. App. Unpub. LEXIS 1385 (Ky. Ct. App. Feb. 14, 2003) (clearly showing that other employees witnessing an event and a manager's knowledge when using authority to terminate impute knowledge of a worker's compensation claim to employer); Robinson v. McKechnie Vehicle Components USA, Inc., 2008 Ky. App. Unpub. LEXIS 288 (Ky. Ct. App. Nov. 26, 2008) (clearly showing that had the plaintiff informed any one working for employer of their intention to file claim, then employer would have had knowledge of the claim as well).

[90] Depo. of Toni Jones, pp. 34, 46.

injuries, medical treatment, and desire to be told her individual claim number. Therefore,

Defendant knew of, or at least could reasonably infer, Plaintiff's implied intention to

engage in a protected activity whether or not Jones individually discussed it with anyone.

Defendant used this knowledge to terminate Plaintiff. This termination would not have

happened had Plaintiff otherwise left a claim for workman's compensation alone.

Therefore, Plaintiff has established her *prima facie* case.

> **B.      PLAINTIFF HAS SHOWN THAT DEFENDANT HAS NO NON-RETALIATORY REASON FOR PLAINTIFF'S TERMINATION, AND IF EVEN IF DEFENDANT DID THEN SUCH A REASON IS MERELY PRE-TEXTUAL**

Assuming Plaintiff establishes her *prima facie* case, Defendant provides only one

justification as their neutral, non-retaliatory reason for terminating Plaintiff, namely that

she acted unprofessionally and dangerously.[91] This justification is not enough to meet

their burden of providing a non-retaliatory termination of Plaintiff for the sole reason that

the allegations that Plaintiff acted unprofessionally are untrue, or at the least in material

dispute. As can be seen in the video, Plaintiff tells the unknown man the full extent of

what she can do for him (i.e. pass a message to the vending machine company).[92]

Plaintiff does not even resort to telling the man to leave until after he first uses profane

language, and when she does ask him to leave she does so appropriately.[93] Then the man,

without provocation, jumps on the counter in an attempt to threaten Plaintiff.[94] Plaintiff

refused to engage him physically.[95] It was not until the man harmed Defendant's property

and created a potentially unsafe environment for Defendant's tenants that Plaintiff tried to

---

[91] Defendant's Memo in Support, pp. 10–11.
[92] Incident Video, attached to Defendant's Memo in Support as Exhibit B.
[93] Id.
[94] Id.
[95] Id.

control him.[96] When Plaintiff decided to act she still avoided physical contact with the man until he hit her first.[97]

Plaintiff's conduct was nothing but professional and safety-oriented and therefore cannot be the non-retaliatory reason Defendant terminated her. Without this justification, Plaintiff's *prima facie* case stands alone without rebuttal and must be allowed to continue forward in the litigation process. Even if Defendant could make an argument for alleged unprofessionalism, at the least Plaintiff has shown the issue of material fact is heavily disputed and an issue of material fact (because it would determine the sole legal basis Defendant had for validly terminating Plaintiff). Therefore, the Defendant's motion should still be denied.

Assuming Defendant's non-retaliatory excuse could stand, their motion should still be denied because their non-retaliatory justification is merely pretext to cover the real substantial motivating factor for Plaintiff's termination, retaliation for intending to engage in a worker's compensation claim. First, Defendant fired Plaintiff mere hours after she called asking for the claim number Defendant's should have already had for her. Further, Jones admitted that the decision makers as to Plaintiff's termination did not meet until after the Thanksgiving holiday to discuss termination. Plaintiff did not call Defendant requesting the claim number until after Thanksgiving.[98] Therefore, Defendant only considered terminating Plaintiff after they knew she intended to file a claim and then during the same day terminated her.[99]

---

[96] Id.
[97] Id.
[98] Depo. of Amy Witham, p. 121
[99] Depo. of Toni Jones, pp. 23, 28, 33, 46–47.

Close temporal proximity between a triggering event and an adverse employment action, without more between, may be enough to establish a causal relationship sufficient to overcome summary judgment.[100] In Markos v. Mount Brighton, Inc., the plaintiff requested FMLA leave and was subsequently terminated from his employment on the same day.[101] The court there stated, ""proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection."[102] Further,

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.[103]

The Markos court held, "Plaintiff's termination coincided with the exact day of his request for FMLA leave, and as such, Plaintiff has met his prima facie burden for purposes of summary judgment . . . Based upon the immediacy of the termination, the Court can infer a causal connection between the two actions, even if Plaintiff produces no other evidence of retaliation."[104]

Here, Defendant terminated Plaintiff **the same day** she also called Defendant to inquire about her worker's compensation claim. Defendant's only excuse to save them from pretext could be that they had considered termination of Plaintiff before the date of

---

[100] See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (referencing "cases that accept mere temporal proximity . . . 525 as sufficient evidence of causality to establish a *prima facie* case" and noting that those cases "uniformly hold that the temporal proximity must be `very close'") (citations omitted)); Mickey v. Zeidler Tool and Die Co., 516 F. 3d 516 (6th Cir. 2007).

[101] Markos v. Mount Brighton, Inc., 2009 U.S. Dist. LEXIS 75063 ( E.D. Mich. Aug. 24, 2009).

[102] Id. at 16 (quoting Bryson v. Regis Corp., 498 F.3d 561, 571 (6th Cir. 2007)).

[103] Id. (quoting Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)).

[104] Id. at 17–18.

actual termination. Defendant vaguely alludes to this argument in their memorandum in support of their motion.[105] However, such an argument made by Defendant would be untrue as Defendant admits that because of the Thanksgiving holiday they pushed back any talks or decisions to terminate Plaintiff, and the portion of a deposition cited in their memorandum refers to a meeting which took place on November 26, 2012 (the date of termination), not the preceding Monday as Defendant's memorandum claims.[106] The fact is Defendant terminated Plaintiff the same day her worker's compensation claim was requested and processed for the sole reason that the claim was processed. Any other excuse is mere pretext.

Second, Defendant never considered any form of alternative discipline for Plaintiff, an exemplary employee who had never known any trouble in two years.[107] It is hard to imagine that Defendant's would be so eager to terminate their best manager outright after one incident, unless there was an ulterior motive for the termination. Defendant's policies clearly state that Defendant abides by a progressive discipline program.[108] The only known times Defendant has immediately terminated workers is when they were abusing controlled substances, stealing, carrying dangerous weapons on hotel property, and/or lying on job applications.[109] Plaintiff did not do any of these acts, nor has Defendant made any such claim. Defendant immediately firing Plaintiff for

---

[105] Defendant's Memo in Support, p.

[106] *See* Depo. of Toni Jones, p. 33. "Let's go back to that Monday [November 26, 2012] . . . how did that [decision] work?" "Collective." Do you recall any discussion . . . of a penalty less than termination?" . . . "No. We didn't see any other option." "And can you tell me why that is?" "Based on what the video showed and the way that Amy reacted and behaved . . . we felt we had no other option but to separate." Id. This clearly shows that the portion of quoted text in Defendant's memo, used to allude to the argument that Defendant had earlier considered termination, was in reference to a November 26, 2012 conversation (the day of termination) and not some earlier meeting preceding termination. *See* id.

[107] Id. at pp. 33–35, 44.

[108] Id. at p. 36.

[109] Id. at pp. 42–44.

actions other than the ones listed above goes against their own precedent and policy, showing there was a motive beyond unprofessionalism for the termination of Plaintiff. It is well established that an employer's failure to follow its own policies and/or procedures when taking an employment action may serve as proof that the employer's articulated reason for the action is pretext for discrimination.[110]

Perhaps most important for the consideration of pretext, Lucas had just as much physical altercation with the unknown individual, if not more, as Plaintiff did. Lucas can be clearly seen grabbing the unknown individual and wrestling him to the point where he pins him against a wall.[111] Where Plaintiff only had physical contact with the unknown man in order to defend her person, Lucas intentionally initiated his contact with the man to forcibly detain him.[112] The only difference between Lucas and Plaintiff in this case is that Lucas has not filed a worker's compensation claim and was not terminated or even disciplined for his actions. If Defendant's were truly non-retaliatory and neutral in immediately firing Plaintiff for contact she had with the unknown third-party, one would expect the same consequences to extend for the same, if not more purposeful, actions of Lucas.[113] However, that did not happen here as Plaintiff was singled out and retaliated against for filing a worker's compensation claim.

---

[110] See Village of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252, 267 (1977) ("Departures from the normal procedural sequence also might afford evdience that improper purposes are playing a role."); Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282 (10th Cir 2007) ("An employer's failure to follow written or unwritten policy may support a showing of pretext."); Bass v. Bd. of County Comm'rs, Orange County Fla., 256 F.3d 1095, 1108 (11th Cir. 2001) (stating that employer's violation of its own hiring procedure could be evidence of pretext); accord Rudin v. Lincoln Land Community Coll, 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").

[111] Incident Video, attached to Defendant's Memo in Support as Exhibit B.

[112] Id.

[113] Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth., 132 S.W.3d 790, 804 (Ky. 2004) (showing that differing treatment can establish enough cause to survive a motion to dismiss)

## III. THERE IS A GENUINE ISSUE OF MATERIAL OF FACT CONCERNING PLAINTIFF'S DISABILITY CLAIM

"To establish a *prima facie* claim for disability discrimination, [plaintiffs] need to establish that: (1) she has a disability as defined under the Kentucky Civil Rights Act; (2) she was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the disability."[114] Defendant here claims it is entitled to summary judgment on Plaintiff's disability claims because Plaintiff is not actually disabled.[115]

First, Plaintiff's claim is a "regarded-as" disability claim.[116] KRS 344.010(4), the Kentucky Civil Rights Act (KCRA) defines "disability" as:

(a)     A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;
(b)     A record of such an impairment; or
(c)     **Being regarded as having such an impairment.**

(Emphasis added.) *"Discrimination* means *any* direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons...."[117] Claims arising under the KCRA are to be interpreted consistently with federal law.[118] The purpose of Kentucky's law is to "provide for execution within the state of the policies embodied in . . . the Americans With Disabilities Act [hereinafter, "ADA"] of 1990."[119] Thus, Defendant cannot avoid liability simply because Plaintiff might not be

---

[114] Murray v. E. Ky. Univ., 328 S.W.3d 679 (Ky. Ct. App. 2009) (citing Hallahan v. The Courier Journal, 138 S.W.3d 699, 706-07 (Ky.App. 2004)).
[115] Defendant's Memo in Support, pp. 15–17.
[116] *See, e.g,* Howard Baer, Inc. v. Schave, 127 S.W.3d 589 (Ky. 2003); Hallahan v. Courier Journal, 138 S.W.3d 699 (Ky. App. 2004).
[117] Brooks v. Lexington-Fayette Urban Cty. Housing Authority, 132 S.W.3d 790, 801 (Ky. 2004) (quoting KRS 344.010(5) (emphasis in opinion)).
[118] Ammerman v. Bd. of Educ., Nicholas County, 30 S.W.3d 793, 797-98 (Ky., 2000).
[119] KRS 344.020(1)(a).

actually disabled if, when they discriminated against Plaintiff, they regarded her at that time as disabled.

Many of the same standards discussed above apply to Plaintiff's disability claim. Plaintiff need only show "some evidence" that a perceived disability was a "motivating factor" in her termination.[120] The Sixth Circuit has spoken clearly on several different occasions that summary judgment is inappropriate for cases in which motive and intent are at issue and in which one party is in control of the proof.[121] In a 2007 opinion, the 6th Circuit Court of Appeals reiterated that the question of an "employer's motive" in a "regarded as" claim is one rarely susceptible to resolution at the summary judgment stage."[122] The trial court in Wysong initially held that the Plaintiff failed to make her *prima facie* case because although she had work restrictions from her physician, her physician did not state that she was unable to perform a "broad class of jobs." The Court went on to state, "[b]ut such specific evidence is not required to make a *prima facie* showing of a disability."[123] The Wysong Court looked further into the issue about perception as it relates to a broad class of jobs. In Ross vs. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir. 2001), the court held that "Campbell's state of mind is more appropriate for a jury than a judge."

Defendant focuses too much on present injuries and completely ignores the fact that at the time of termination they regarded Plaintiff as needing rest and could not yet

---

[120] White v. Baxter Healthcare Corp., 533 F.3d 381 (6th Cir. 2008).
[121] *See* Cooper v. North Olmstead, 795 F.2d 1265, 1272 (6th Cir.1986); *see also* Leonard v. Frankfort Electric and Water Plant Bd., 752 F.2d 189 (6th Cir. 1985).
[122] See Wysong vs. Dow Chemical Co., 503 F.3d 441 at 451-452 (6th Cir. 2007), citing Ross vs. Campbell Soup Co., 237 F.3d 701 at 706 (6th Cir. 2000).
[123] Wysong at 452.

determine the full extent of her injuries. [124] At the time of termination Plaintiff was trying

to go to a hand specialist. Defendant knew about all of Plaintiff's injuries. Defendant may

have regarded Plaintiff as having a disability as a result of her injuries, and therefore been

motivated to terminate her as a result rather than accommodate her potential disability. In

addition, the temporal proximity involved here, combined with the obviously pretextual

reasons proffered by the employer, again raises a genuine issue of material fact on this

claim – and all of Plaintiff's claims – and they should be decided by a jury.

## IV. DEFENDANT VIOLATED PUBLIC POLICY BY TERMINATING PLAINTIFF

If a specific law does not establish a public policy, then a plaintiff must prove

their termination was in violation of public policy claim by showing 1) she was

exercising a fundamental right or 2) refused to commit an illegal act.[125]

In this case, Plaintiff was exercising her right to defend herself. It is

unquestionable that a person has a right to defend himself or herself as evidenced by the

U.S. Constitution[126], case law,[127] and common sense. In this case, Defendant terminated

Plaintiff for what they perceived and claimed to be unprofessional conduct. This alleged

unprofessionalism included the physical contact Plaintiff had with the unknown

individual.[128] Despite Defendant's claims, the video of the incident clearly depicts that

Plaintiff only physically engaged the unknown individual after he attacks her.[129] Thus,

Plaintiff was exercising her right to defend herself and Defendant has blatantly

---

[124] Depo. of Toni Jones, p. 16.
[125] Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows, 666 S.W.2d 730 (Ky. 1983); Grzyb v. Evans, 700 S.W.2d 399 (Ky. 1985); Welsh v. Phoenix Transp. Servs., 2009 Ky. App. LEXIS 137 (Ky. Ct. App. Aug. 14, 2009).
[126] U.S. Constitution, Amendment 2.
[127] Posey v. Commonwealth, 185 S.W.3d 170 (Ky. 2006); Lovelace v. Commonwealth, 285 Ky. 326, 147 S.W.2d 1029 (1941).
[128] Depo. of Toni Jones, pp. 18–19, 27, 34.
[129] Incident Video, attached to Defendant's Memo in Support as Exhibit B.

terminated her for it and attempted to disguise their behavior by opting to call the right to

defend "unprofessional." Therefore, Defendant terminated Plaintiff in violation of public

policy. At the least, this issue is heavily debated and a genuine issue of material fact, the

material fact being that this argument is the sole basis as to if Defendant is liable to

Plaintiff on this public policy claim. As such, the issue should be determined by a jury

and not by summary judgment.

## CONCLUSION

Defendant's Motion for Summary Judgment should be denied. In regards to

retaliation, Plaintiff has established a *prima facie* case and rebutted any non-retaliatory

reasons proffered by Defendant for her termination. In regards to disability, Plaintiff has

shown that she had a regarded disability and was terminated for it. In regards to public

policy, Plaintiff has shown she was exercising a fundamental right and was terminated for

it. Even if it is ultimately determined that Plaintiff is not successful at trial, she has at the

least shown in this Response that the issues are genuine and relate to material facts of the

case. As such, summary judgment is wholly inappropriate and a jury should decide these

issues. Therefore, Defendant's motion should be denied.

Respectfully submitted,


/s/ Daniel J. Canon_____
GARRY R. ADAMS
DANIEL J. CANON
CLAY DANIEL WALTON ADAMS, PLC
Meidinger Tower, Suite 101
462 S. Fourth Street
Louisville, Kentucky 40202
(502) 561-2005
garry@justiceky.com
dan@justiceky.com

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on the 19th day of December, 2014, a copy of the foregoing Plaintiff's Response to Defendant's Motion for Summary Judgment was filed electronically with the Clerk of the Court using the CM/ECF System which will send a note of electronic filing to all registered counsel.


/s/ Daniel J. Canon
DANIEL J. CANON