UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:13-CV-01167-JGH

AMY SUE WITHAM                                                                   PLAINTIFF

v.

INTOWN SUITES LOUISVILLE
NORTHEAST, LLC                                               DEFENDANT

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, InTown Suites Louisville Northeast, LLC ("Intown Suites"), in further support of its Motion for Summary Judgment, hereby provides this Reply.[1]

**I.    A *prima facie* case of KRS §342.197(1) requires that Plaintiff demonstrate a causal connection between her termination and pursuit of benefits, which Plaintiff cannot do based on the evidence of record.**

Plaintiff has not surpassed her initial hurdle in demonstrating a causal connection between her termination and pursuit of workers' compensation benefits. There is no evidence that her pursuit of workers' compensation benefits was considered by Intown Suites when it terminated her, let alone, that such a claim was a "substantial and motivating" factor in her termination. Toni Jones testified that neither Plaintiff's injuries from the altercation nor any workers' compensation claim was ever discussed or even mentioned during conversations about Plaintiff's egregious conduct during the Incident:

> Q.   Now, at that point in time -- I'm sorry. I'll backtrack again. Any discussion about her workers' compensation during that teleconference?
> A.   None whatsoever.
> Q.   Was there any conversation about her injuries?

---

[1]    Intown Suites has not attached exhibits previously provided to this court as part of its Memorandum in support of its Motion for Summary Judgment.

>   A.   I don't believe so, while we viewed the tape or afterwards.
>
>   \*\*\*
>
>   Q.   Okay. At any point in your discussion of Amy's conduct or the situation or after watching the video, at any point did you discuss Ms. Witham having a workers' comp claim?
>   A.   That was not mentioned whatsoever.
>   Q.   Did --
>   A.   Let me interrupt. That was not mentioned or considered whatsoever.[2]

See Toni Jones' deposition, cited portions previously provided at pages 50-52, 55.

This Court has found that a plaintiff must have some evidence that a claim for workers compensation benefits was a consideration and factor in the termination. *See Chavez v. Dakkota Integrated Systems, LLC,* 832 F.Supp.2d 786 (W.D.Ky.,2011) (granting summary judgment to employer where plaintiff produced no evidence that his workers' compensation claims were a factor in defendants' actual decision to lay him off). Plaintiff admits in her response that Intown Suites told her that her conduct during the Incident was unprofessional and violative of policies. Plaintiff has simply not presented any evidence of record that the "substantial and motivating" reason for her termination was her pursuit of workers' compensation benefits.

Admittedly there is temporal proximity between Plaintiff's request for a workers' compensation claim to be opened and her termination. However, in determining whether temporal proximity alone is enough to establish a causal connection, the court should view the time between the two events in the "context of the entire circumstances." *Dollar General Partners v. Upchurch*, 214 S.W.3d 910, 916 (Ky. App 2007). The record is clear that Plaintiff's unprofessional involvement in the Incident occurred on the Monday prior to Thanksgiving. Toni Jones testified that she and other management did not view the video of the Incident until the day

---

[2] Plaintiff attempts to argue in her Response that "what Jones did or did not know individually does not matter to the extent that other agents of the defendant involved in the termination did have knowledge of Plaintiff's intentions." However, if Jones was not aware of Plaintiff's alleged intentions of filing a claim, it further supports that her injuries and alleged intent to file such a claim never came up in conversations about her termination. If they had, Jones would have known about them.

2

before everyone was leaving town for the holiday and Intown Suites' offices were closed until the following Monday. The context of the circumstances here explains why termination occurred on the same day as her request for benefits made via telephone to Mindy Louden, a person wholly uninvolved with her termination and unaware of the Incident—it was the first day the office re-opened after the Thanksgiving holiday. Moreover, as discussed more fully below, Plaintiff's conduct depicted in the video of the Incident expressly violated a number of written policies of Intown Suites, which carried the consequence of immediate termination. Plaintiff simply has not presented sufficient evidence of record that there is a causal connection between her termination and her request for workers' compensation benefits. As such, she has failed to state a *prima facie* case of retaliation and Intown Suites is entitled to judgment as a matter of law on her claim.

**II. Plaintiff has not met her burden in demonstrating that Intown Suites' non-retaliatory reason was a pretext for unlawful retaliationKRS §342.197(1)**.

Even though Plaintiff cannot make out a *prima facie* case of retaliation, Intown Suites has articulated a legitimate, non-retaliatory reason for her termination—her conduct on the date of the Incident was unprofessional and violated a number of Intown Suites' policies. Having come forward with such a reason, the burden is then placed on Plaintiff to demonstrate this reason is a pretext for unlawful discrimination. This she cannot do as a matter of law.

A plaintiff can only demonstrate pretext by showing that (1) the employer's stated reason for terminating employee has no basis in fact, (2) the reason offered for terminating employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action. *Harris v. Burger King Corp.*, 993 F.Supp.2d 677 (W.D.Ky., 2014). In light of the video footage of the Incident, it cannot be said that Intown Suites' reason for terminating Plaintiff—her actions on the date of the Incident—has no basis in fact. The video

3

speaks for itself.  Moreover, it is undisputed that Intown Suites had policies in place that were violated by Plaintiff's conduct, which Plaintiff acknowledged upon hire and include:

### HARASSMENT

InTown Suites prohibits harassment of one employee by another employee or third party, including vendors and guests, for any reason including, but not limited to: age, race, color, physical disability or mental disability, veteran status, marital status, national origin, religion and/or sex. **Harassment of third parties by our employees is also prohibited.**
\*\*\*
**While it is not easy to define precisely what harassment is, it certainly includes slurs, epithets, threats, derogatory comments, unwelcome jokes and teasing.**

**Violations of this policy will not be tolerated and may result in corrective action, up to and including termination.**

### CORRECTIVE ACTION POLICY

The employees of InTown Suites are the company's most valuable assets.  As such, all employees should be treated with dignity and respect.  InTown Suites is committed to fostering a professional work environment and desires for all its employees to be successful in their employment.

However, there may be times when an employee has poor performance, displays inappropriate or unprofessional behavior, or acts against company policy.  In those instances, corrective action is required and will be taken. InTown Suites has a progressive corrective action policy that gives employees the opportunity to improve their performance or to correct action and/or behavior that is against company rules and policies.

The corrective action policy will usually start with a verbal warning.  If, after receiving a verbal warning, the employee continues to perform poorly or commits another infraction that is against Company policy, the employee is to be issued a written warning.  If, after receiving a verbal warning and a written warning, the employee continues to have poor performance or commits another infraction that is against company policy, the employee may be subject to termination.  Please keep in mind that verbal warnings and written warnings may be skipped and/or repeated, and are to be treated on a case-by-case basis.

> \*\*\*
> **In addition, there are clearly serious infractions that are cause for immediate termination. These include, but are not limited to:** theft, being under the influence of drugs or alcohol while on the job, possession of a dangerous or deadly weapon on company property, **harassment of employees and/or guests, assault, discrimination against employees and/or guests,** felony convictions, **inaccurate information on a job application and knowingly and willingly contributing to an unsafe condition on company property. This list is not meant to be all-inclusive.**[3]

*See* Intown Suites' policies, attached hereto as collective Exhibit A (emphasis supplied).

The video footage confirms, at a minimum and regardless of Plaintiff's intent, that she "contributed to an unsafe condition," and made "threats and derogatory comments" to a third-party. Both of these actions expressly carried the consequence of immediate termination:

> Q. Right. And is there a progressive disciplinary policy that applies to the general managers at Intown Suites?
> A. We have a corrective action policy that includes either progression or immediate, based upon the circumstances.
> Q. Okay. And what was it about these -- I assume that she had not had any prior warnings; is that correct?
> A. That's correct.
> Q. Okay. So this was an immediate termination situation?
> A. It was a termination situation that did not warrant progressive action.

*See* Deposition of Toni Jones, at page 36, lines 8-21 (attached as collective Exhibit C). As such, Plaintiff cannot seriously contend that her conduct was not the reason for her termination.

Finally, Plaintiff cannot show that Intown Suites' reason offered was insufficient to explain or support termination. A plaintiff cannot show that an employer's reason for termination was insufficient where employer discharged plaintiff for violation of a company

---

[3] In fact, in addition to her unprofessional conduct on the date of the Incident, Plaintiff omitted a previous employer on her application to Intown Suites. An open records request after this litigation was commenced revealed that Plaintiff filed for workers' compensation benefits with this employer after getting into a fist fight with an employee she was terminating. *See* redacted documents from the Kentucky department of Workers' claims, attached as exhibit B. Toni Jones testified that had she known about this prior unprofessional incident, Plaintiff would have never been hired to manage a property owned by Intown Suites. *See* Deposition of Toni Jones, at page 49-50 (attached as collective Exhibit C).

policy. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 560-561 (6th Cir.2009). Here, Plaintiff's conduct was video- recorded and captured for the decision-makers at Intown Suites to see. Intown Suites followed its disciplinary policy and terminated Plaintiff for her conduct, which included "contributing to an unsafe condition on company property" and harassment of a third party. Intown Suites was justified in terminating Plaintiff immediately for these policy violations. Plaintiff simply cannot produce evidence of record proving that Intown Suites' proffered non-retaliatory reason for her termination was a pretext. As such, Intown Suites is entitled to summary judgment on this claim.

### III. Plaintiff has no evidence that Intown Suites unlawfully terminated her because it "regarded her as disabled."

Plaintiff has now admitted that she was not actually disabled and does not assert a claim based on a record of impairment, but instead relies on the "regarded as" basis for her claim. As with actual impairments, the perceived impairment under the "regarded as" prong must be one that, if real, would substantially limit a major life activity of an individual. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 707(Ky.App. 2004); *see also Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1216 (11th Cir.2004). As discussed in prior briefing, Plaintiff's fractured pinky finger is not a "disability," in the sense that it is not a permanent injury and a broken finger does not substantially limit any major life activity. In *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999), the Supreme Court stated that an individual may fall within the provision for being "regarded as" having a disability if:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a

substantially limiting impairment when, in fact, the impairment is not so limiting.[4] *See also* 29 C.F.R. § 1630.2(*l* ).

The record suggests, and Intown Suites does not contest, that Intown Suites was generally aware that Plaintiff had some injuries from the altercation for which she went to the emergency room on the date of the incident. The mere fact that Intown Suites had general knowledge that Plaintiff sustained injuries, however, is not sufficient to show that it regarded her as having a disabling impairment. *Hallahan v. The Courier-Journal*, 138 S.W.3d at 707; *see also Kelly v. Drexel University,* 94 F.3d 102, 109 (3rd Cir.1996); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.1996); *Conant v. City of Hibbing,* 271 F.3d 782, 785 (8th Cir.2001). Plaintiff never provided any medical documentation or paperwork to Intown Suites prior to her termination that outlined any restrictions or injuries. There is simply no evidence that anyone at Intown Suites "regarded her" as "having a physical impairment that substantially limits one or more major life activities," much less, that this was the basis for Plaintiff's termination. Even Plaintiff characterizes her claim as speculative in her Response, "[d]efendant *may* have regarded Plaintiff as having a disability as a result of her injuries, and therefore been motivated to terminate her…." A subjective belief cannot be considered as evidence and does not succeed in creating a genuine issue of material fact. *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 3 (Ky.1990). Intown Suites is entitled to judgment as a matter of law on this claim.

**IV.    Plaintiff has not articulated a valid claim for wrongful discharge in violation of public policy.**

Although it is not articulated in her Complaint, Plaintiff has now clarified that the basis for her wrongful discharge claim is that she was terminated for "exercising her right to defend

---

[4] The *Sutton* Court also noted that the purpose of the "regarded as" prong is to cover individuals rejected from a job because of the myths, fears and stereotypes associated with disabilities. 527 U.S. at 489–90.

herself." She identifies the Second Amendment to the United States Constitution in furtherance of her position, which states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Amend. II. The Second Amendment guarantee only proscribes governmental transgressions. It does not limit the employer's right to discharge an employee and, as such, cannot be the basis for an action for wrongful discharge against Intown Suites. *See Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky.,1985) (holding that First amendment guarantee of freedom of association only proscribes governmental transgressions and would not provide a cause of action against employers for wrongful discharge).

Moreover, this argument assumes that she was terminated solely for her physical altercation with the unknown man. Toni Jones testified that Plaintiff's conduct prior to any physical altercation was unprofessional and warranted termination:

> Q. Okay. And what was discussed that day – on that conference call? I'm sorry.
>
> A. What Lucas and Depa told McCracken.
>
> Q. Which was what?
>
> A. That a person came into the office to ask for reimbursement, or a refund, for water from the vending machine. **Amy became very combative verbally** with this person, began -- and the person responded accordingly. **Amy then encouraged -- or dared the person to come across the counter toward her.** At that time Depa grabbed the phone and started heading out the back door to call 911. **Amy then came from behind the desk through the locked door into the lobby area, confronted this unknown person, then blocked the front door to keep that person from leaving.** There was another scuffle in the lobby….

*See* Exhibit C, at page 13, lines 9-25.

Plaintiff's conduct was unprofessional leading up to the physical altercation, which never would have occurred if she had handled the situation more professionally and safely. It is disingenuous for her to assert that she was "defending herself" when she invited the man to cross the counter, came out from behind a locked door to approach him and then prevented him from leaving the lobby of the hotel. Intown Suites is entitled to judgment as a matter of law on Plaintiff's claim for wrongful discharge.

## CONCLUSION

Plaintiff engaged in unprofessional conduct and provoked an unnecessary physical altercation on the day of the Incident, placing herself and others around her in danger and contributing to the destruction of Intown Suites' property. Plaintiff's conduct was unacceptable and she was terminated for it, pursuant to written policies of Intown Suites. Her subsequent pursuit of workers' compensation benefits and her fractured pinky finger was never mentioned during any conversation about termination of her at-will employment. As such, Intown Suites is entitled to Summary Judgment on her claims.

Respectfully submitted,

**WILSON ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

s/ Marcia L. Pearson

Marcia L. Pearson
100 Mallard Creek Road, Suite 250
Louisville, KY 40207
502.238.8500
502.238.7995 – fax

*Counsel for Defendant*

6465998v.1

**CERTIFICATE OF SERVICE**

      This is to certify that on December 31, 2014, I electronically filed this document through the ECF system to the following:

Garry R. Adams
Daniel J. Canon
Clay Daniel Walton Adams, PLC
Meidinger Tower, Suite 101
462 S. Fourth Street
Louisville, Kentucky 40202
*Counsel for Plaintiff*

                                          s/ Marcia L. Pearson

                                          *Counsel for Defendant*