UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AMY SUE WITHAM, Plaintiff,

v.   Civil Action No. 3:13-CV-1167-DJH

INTOWN SUITES LOUISVILLE
NORTHEAST, LLC, Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Intown Suites Louisville[1] Northeast, LLC ("Intown") fired Amy Sue Witham from her job as a hotel general manager following her altercation with a disgruntled vending machine customer, citing her unprofessional behavior during the fracas as the reason for her termination. Witham suffered minor injuries during the confrontation and filed a request for workers' compensation the same day Intown fired her. Witham now claims that her firing was retaliation for that request. Intown believes that no jury could find in her favor. It requests summary judgment. The Court agrees that summary judgment is appropriate.

**I.      Factual Background**

Witham was the General Manager of an extended-stay hotel property in Louisville, Kentucky. Intown owned that property and employed Witham. The parties agree that until her altercation with the disgruntled vending machine customer, Witham performed her job duties well.

---

[1] Apparently, the Defendant's name is actually InTown Lessee Services, LLC. It is a Delaware corporation with its principal place of business in Atlanta, Georgia. The Plaintiff incorrectly sued the Defendant under the name "Intown Suites Louisville." In briefing, the Defendant continued to refer to itself as "Intown Suites Louisville," and so the Court shall do the same, while acknowledging the correct entity.

As to the events giving rise to her termination, however, Witham and Intown often disagree. In the following paragraphs, the Court recounts the events from the perspective of each party. As this is a motion for summary judgment, the Court will view the facts in the light most favorable to Witham, the non-movant. And so, where the two versions of the events diverge, the Court accepts Witham's version as true.

### A. The Altercation

On November 19, 2012, Witham was working behind the front desk of the hotel. A camera faced the front desk from the public entrance—that is, it was pointing head-on at Witham. In color and with sound, the video from that camera depicts the following events.

Witham was speaking with two men, one of whom, Edward Lucas, worked for Intown. The two men stood on the other side of the front desk from Witham, facing her with their backs to the camera. They were positioned between the front desk and the public entrance. A third man—Damien Depa, at the time an Intown manager-in-training—stood behind the counter with Witham and walked in and out of view during the video.

A few moments into the video, a stranger entered from the public entrance and stood behind Lucas and the other man. When Lucas and the other man realized the stranger was behind them, they ended their conversation with Witham and left through the public entrance. The stranger approached the front desk. He told Witham that the hotel's vending machine was broken—he had ordered a root beer and been given bottled water. Witham began to explain that the hotel did not own the vending machine, and then she asked him for his room number. He told her that he was not an Intown guest—he lived in an apartment across the street. She then told him that the vending machine was for hotel guests only and warned that police could ticket

2

him for trespassing. She reiterated that the hotel did not own the vending machine and that she could not give him a refund.

Then there was silence. Suddenly, the stranger muttered something that—to the Court—was inaudible. Whatever was said, Witham took offense, and replied, "Well, you're not a tenant here so you're not gonna talk like that in my office, and you can go ahead and leave." From here, the situation escalated quickly. She told him several more times to leave. He moved to the door as they continued their heated exchange. She made an exaggerated "goodbye" gesture. As the stranger was about to exit, he made a comment about Witham being lucky that he refrained from coming over the counter of the front desk. Witham then dared him to do so and pointed out the security camera. She repeated the dare several times while raising her voice.

He answered the dare and climbed up onto the counter and threatened to "f[**]k her up"; she kept daring him and even put up her hands—fingers pointed towards the sky, with her palms facing her chest—and motioned repeatedly towards herself, further inviting him to cross over the counter. Then the stranger reached out and shoved a computer monitor to the floor. Witham told Depa to call 911 and came out from behind the front desk. From the parties' briefings, it appears that the door she used was locked from the visitor side—that is, she could come out from behind the desk via the door, but the stranger could not have reached her through the door.

Witham situated herself between the stranger and the public entrance, which blocked his only apparent way out of the lobby. The stranger grabbed the door and repeatedly tried to open it, but each time Witham shoved her body against the door to block his escape. Indeed, the second time he tried to open the door—whether inadvertently or not—Witham stuck out her left forearm near his throat and he visibly recoiled. Then he shoved her; she shoved back. The two scuffled back and forth and fell to the ground. The stranger got the upper hand: He stood up and

3

kicked her at least twice before he flung the door open and rushed out. Not long thereafter, Witham stood up and followed him out. That is the end of the camera's footage. There was more scuffling outside—this time involving Lucas as well—but the stranger got away before police arrived.

Witham eventually went back inside, collected her things, and went to the hospital for treatment. She complained of a broken finger; a sore right hand; and swelling, bruising, and pain in her face. There is dispute about who made contact, but either Witham or Depa reached out to Mark McCracken, the Market Manager for Intown, to tell him about the incident. When McCracken arrived, he, Lucas, and Depa spoke to the responding police officers about what happened. McCracken also conversed with Witham's brother about her condition. Depa prepared an incident report, coded as "police or fire on the scene," that was automatically sent to Intown's upper management in Georgia, including Toni Jones, General Counsel.

### B. The Termination of Witham's Employment

The aftermath of the incident brought the litigants to this Court. Witham's altercation with the stranger occurred the week of Thanksgiving. Jones and the other members of upper management watched the video for the first time the day before Thanksgiving. Jones testified that they were "shocked" by Witham's unprofessionalism. Since the upper management members were all about to leave for the holiday, they agreed to put Witham on administrative leave until they had a chance to fully consider what had happened. The parties dispute *how* Witham was notified that she was on administrative leave. According to Intown, McCracken called Witham to tell her she was on leave. Witham disagrees; Witham says she reached out to McCracken first to ask about workers' compensation—it was only when he called Witham back that she found out about the administrative leave.

4

The next Monday, Jones and the rest of upper management reconvened. They agreed that because of the unprofessional way Witham reacted to the stranger and how her behavior contributed to the incident's escalation, they had no option but to terminate Witham. No member of upper management opposed her firing. At some point, Jones and McCracken called Witham to inform her of her termination.

Meanwhile, Witham sought workers' compensation. There is dispute between the parties as to when this happened. According to Witham, Intown didn't open a workers' compensation claim for her until after she requested one because of a problem with the coding of the incident report. She called McCracken once the week of the incident, but rather than talk about possible workers' compensation, he told her she was on administrative leave. She then called McCracken about it a second time—on the Monday she was fired—and he told her to call Mindy Louden, a Human Resources employee at Intown. Louden told Witham that she would "take care of it," but Louden only began the workers' compensation claim after she spoke to Jones, Intown's general counsel. According to Intown, though, workers' compensation came up for the first time on that Monday, when Witham reached out to Louden, who had been out of the office Thanksgiving week. Louden located the incident report while on the phone with Witham and opened the claim that day. Intown says the members of upper management never discussed Witham's workers' compensation claim until *after* they decided to fire her; Jones said in her deposition that she only spoke to Louden to tell her that upper management was terminating Witham. As this is a motion for summary judgment, the Court accepts Witham's version of the facts.

Before her termination, Witham never met with Jones to discuss the incident. Intown had a "progressive discipline program"—where, for example, an employee who broke company rules

5

for the first time would get a verbal warning, a written warning for a second offense, and so on—but the policy stipulated that, in certain circumstances, the progressive program could be skipped and result in the immediate termination of an employee. Witham received no progressive discipline.

In May 2013, Witham filed this lawsuit in Jefferson Circuit Court. She alleged unlawful retaliation for filing a workers' compensation claim under KY. REV. STAT. § 342.197(1); a claim for disability discrimination under KY. REV. STAT. § 344.010 *et seq.*; and a claim for wrongful discharge in violation of public policy. During discovery, Witham revealed that she seeks over one million dollars in damages. Intown then removed the case to this Court on the basis of diversity jurisdiction.

## II.  Standard

To grant a motion for summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Viewing this case in the light most favorable to Witham, the non-movant, and drawing all reasonable inferences in her favor, the Court concludes that genuine issues of material fact do not exist and grants Intown's motion for summary judgment. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

### III. Discussion

### A. Kentucky Workers' Compensation Claim

Witham's first claim is that Intown fired her for seeking workers' compensation. Kentucky employers may ordinarily fire at-will employees for good cause, no cause, or even rationales that many would find morally reprehensible. *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). There are some exceptions, though, like Kentucky's special statutory protection of employees seeking workers' compensation. *See* KY. REV. STAT. § 342.197(1). That statute provides: "(1) No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter." *Id*. To make out a prima facie case, Witham must show that "(1) [s]he engaged in a protected activity; (2) [Intown] knew that [Witham] had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006) (citation omitted). The last element requires proof that the workers' compensation claim was a "'substantial and motivating factor but for which [Witham] would not have been discharged.'" *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001) (quoting *First Prop. Mgmt. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993)). If Witham can establish a prima facie case, "the burden shifts to [Intown] to show a non-retaliatory reason for the adverse employment decision." *Dollar Gen.*, 214 S.W.3d at 916. Ultimately, Witham must "prove by a preponderance of the evidence that the legitimate reasons offered by [Intown] were not its true reasons but were a pretext." *Id*. (citation omitted).

Intown disputes that she can even meet the first element—it cites case law to support the argument that seeking medical help and discussing possible workers' compensation are not the

same as actually pursuing benefits under workers' compensation. *See Hall v. Hammond Transp. Inc.*, No. 2008-CA-000836-MR, 2009 WL 3231392 at *6 (Ky. Ct. App. Oct. 9, 2009) ("[I]f such benefits are to be secured, the employee must pursue them."). Intown's argument, however, is ultimately irrelevant. Even accepting the evidence in a light most favorable to Witham and assuming that she was engaged in protected activity, the Court concludes that she could not meet her burden at trial because of the paucity of causation evidence.

There is a dispute about who knew what when. For argument's sake, the Court assumes that two of the four people—Jones and McCracken—who voted to terminate Witham knew of her workers' compensation claim.[2] Witham was terminated, which is an obvious adverse employment decision. The first three elements thus are in her favor; the fourth, however, prevents her from overcoming Intown's arguments.

Witham has no direct proof of a causal connection between her requested workers' compensation and the decision to terminate her. Indeed, the only proof on the matter cuts against her. In her deposition, Jones testified that Witham's request for workers' compensation was never mentioned or considered in the meeting on Witham's termination. Witham offers nothing that directly rebuts this testimony. Without any direct proof, Witham would have difficulty convincing a reasonable jury that her request for workers' compensation was a "substantial and motivating factor" behind her termination.

In the absence of direct proof, Witham must rely on an inference of causal connection based on Intown's awareness of her pursuit of workers' compensation—which the Court assumes for argument's sake—and "a close temporal relationship between the protected activity and the adverse action." *See Dollar Gen.*, 214 S.W.3d at 915 (citation omitted). The close

---

[2] Again, the parties dispute this. The Court assumes Jones and McCracken were aware of her claim since that is the version of the facts most favorable to Witham.

temporal relationship exists since Witham spoke with Louden about the claim on the same day she was terminated. Yet, despite the temporal relationship, no reasonable jury could find for Witham.

Intown had a legitimate, non-discriminatory reason to fire Witham. Indeed, the reason is obvious. Witham's behavior—as captured in the security camera recording—was objectively unprofessional, unsafe, and demonstrated a lapse of judgment. But Witham gives a completely disparate view of what happened—that she was fired for requesting workers' compensation because of her injured pinkie finger. Essentially, the question becomes whether a reasonable jury would accept Witham's role in the altercation as a legitimate, non-retaliatory reason or—on the opposite extreme—agree with Witham that her broken finger-related request for workers' compensation was a substantial and motivating factor behind her termination.

Thus, Witham must show that Intown's legitimate reason was mere pretext. She cannot. Proving that a proffered legitimate, non-discriminatory reason for firing is mere pretext requires a showing that "[the] stated reason (1) had no basis in fact, (2) did not actually motivate [the adverse employment action], or (3) was insufficient to motivate [the adverse employment action]." *Gibson v. Solideal USA, Inc.*, No. 3:09-CV-559-H, 2011 WL 63612, at *2 (W.D. Ky. Jan. 2007). The first avenue is clearly unavailing: The altercation happened, so there is a factual basis for Intown's claim that it terminated Witham because of her fisticuffs with the stranger. Witham relies on the second and third avenues—she states that she was fired *only* because she requested workers' compensation and alternatively insinuates that the altercation alone could not have been sufficient to motivate her firing because, for example, Lucas eventually became involved in the altercation as well but was not terminated. No reasonable finder of fact would accept either argument.

There is no direct proof that Witham's workers' compensation claim motivated her termination. Rather, as noted above, the direct proof actually buttresses the opposite conclusion—that it was *not* a motivating factor. Jones' deposition testimony was that Witham's claim was neither discussed nor considered at the meeting. Viewing the undisputed facts in Witham's favor, only two of the four people at the meeting even knew about her workers' compensation claim. And the vote to terminate her was unanimous: Even the two executives who knew nothing of her claim voted to terminate her. These facts impede both the second and third avenues for showing mere pretext. The four Intown executives who participated in the decision favored terminating Witham's employment, and all of them knew about the altercation, but only half of them were even *aware* she had filed for workers' compensation. It cannot be said that the altercation in no way motivated her firing. To do so would require ignoring the undisputed facts as recorded on video. And no reasonable jury would accept—especially after watching the security camera video—the argument that Intown had insufficient reason for firing her.

What of Witham's arguments to the contrary? Her argument that Intown's delay until the Monday after the incident to fire her proves pretext is unavailing. As the incident took place right before Thanksgiving, it is not surprising that Intown waited until after the holiday to decide whether to fire her. Likewise, she takes issue with Intown's decision to fire her immediately rather than go through intermediate steps. As Intown's policy states, though, Intown would skip the progressive discipline program when it deemed fit, based on the particular facts in issue. The decision to skip the progressive discipline program here is no smoking gun. Witham's contention that the decision not to fire Lucas—who also tried to stop the man from fleeing—shows pretext also falls flat. There is an obvious difference between Lucas and Witham: Lucas

did not help instigate and escalate the event; Witham did. For all of these reasons, Witham has fallen short of proving Intown's legitimate, non-discriminatory reason for firing her was mere pretext. Summary judgment is appropriate as to her retaliation claim.

### B. Kentucky Civil Rights Act Claim

Witham's second claim is that she was terminated because of a disability, in violation of the Kentucky Civil Rights Act, KY. REV. STAT. § 344.010 *et seq*. The Kentucky Civil Rights Act (KCRA) mirrors the Americans with Disabilities Act, and so is construed consistently therewith. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 190-92 (2002) (superseded by statute on other grounds). To prevail on this claim, Witham must show that (1) she has a disability under the KCRA; (2) she was otherwise qualified with or without a reasonable accommodation to perform her job; and (3) she was discharged because of the disability. *See Cotter v. Ajilon Serv., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (stating the standard for an ADA claim).

Witham cannot show she was disabled. Under the ADA, a "disability" is a "physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(1)(A). The "disability" she complains of was her injured pinkie finger—an injury she sustained during the altercation. Having a broken pinkie finger does not substantially limit major life activities. Witham correctly responds that she could also pursue her KCRA claim if she were "regarded as having such an impairment," 42 U.S.C. § 12012(1)(C), by Intown when Intown fired her. This portion of the statute is meant to protect people who—at the time of an adverse employment decision—appear to be disabled but are later determined not to be disabled. That is, Witham could recover under the KCRA if she could show that Intown regarded her as disabled and discharged her because of its belief. However, this "regarded as" liability is only viable if the perceived injury is "one that, if real, would substantially limit a

11

major life activity of an individual." *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 707 (Ky. Ct. App. 2004) (citation omitted). Witham argues that because Intown knew she was seeking medical treatment, including a visit to a hand specialist, it regarded her as possibly disabled since the full extent of her injuries was not yet known. The Court cannot conclude that simply knowing about Witham's injuries qualifies Intown as having regarded her as disabled. *See id.* at 708 (discussing that knowledge of medical problems alone did not suffice for "regarded as" liability). Even if it did, there is no evidence that Intown fired her because of the injury to her pinkie finger. No reasonable jury could find in her favor on this disability claim; summary judgment is therefore appropriate.

### C. Public Policy Claim

Witham's last claim is that she was terminated in violation of public policy. This is another cause of action that limits Kentucky's at-will employment doctrine. A plaintiff must prove a discharge was "contrary to a fundamental and well-defined public policy as evidenced by existing law" and show that the policy is "evidenced by a constitutional or statutory provision." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). These are questions of law for the Court to answer, not questions of fact. *Id*. When there are not "explicit legislative statements prohibiting the discharge," a plaintiff can still recover under this theory in two situations "where grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. at 402 (internal quotation marks omitted). Those situations are (1) "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment"; and (2) "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id*. (internal quotation marks omitted).

Witham argues that she was exercising her fundamental right to self-defense.  She says that case law, the Second Amendment to the United States Constitution, and common sense establish her fundamental right to protect herself.  Perhaps.  But this is not a case about self-defense.  Witham was not fired because she fought back; Intown fired Witham, as the undisputed evidence shows, because she incited the disgruntled vending machine customer's behavior.  For all of these reasons, then, summary judgment is appropriate as to all of her claims.  Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 14) is **GRANTED**.  A separate judgment will be entered this date.

June 9, 2015

**David J. Hale, Judge**
**United States District Court**

cc:   Counsel of Record